Affirmed by published opinion. Judge WILLIAMS wrote the opinion, in which Chief Judge WILKINSON and Judge NIEMEYER joined.
 

 OPINION
 

 WILLIAMS, Circuit Judge:
 

 Deborah Shafer appeals the district court’s order granting summary judgment for Preston Memorial Hospital and Victoria Adams in Shafer’s action alleging that the Hospital and Adams discriminated against her on the basis of her drug addiction in violation of the Americans with Disabilities Act (ADA), 42 U.S.C.A. §§ 12101-12213 (West 1995); the Rehabilitation Act of 1973, 29 U.S.C.A. §§ 701-797b (West Supp.1996); and the West Virginia Human Rights Act (WVHRA), W. Va.Code §§ 5-11-1 to -19 (Michie 1994 & Supp.1996). We conclude, although for reasons different from those stated by the district court,
 
 [1]
 
 that summary judgment was appropriate.
 

 I.
 

 From 1982 until 1993, Deborah Shafer worked at Preston Memorial Hospital in various positions, including operating room nurse, assistant director of nurses, quality assurance director, and nurse anesthetist. While working as a nurse anesthetist, Shafer became addicted to Fentanyl, a Schedule II narcotic analgesic,
 
 see
 
 21 U.S.C.A § 812 (West 1981), commonly administered to patients for general anesthesia and post-operative pain control. In the fall of 1992, after a Hospital employee noticed that Shafer was “wasting” a significant amount of Fentanyl,
 
 [2]
 
 the Hospital initiated an investigation. During the investigation, the Hospital caught Shafer returning to the pharmacy for disposal a syringe marked Fentanyl but filled with saline.
 

 On February 12, 1993, Shafer was confronted by Victoria Adams (the Hospital’s personnel director) and several other Hospital employees. After initially resisting, Shafer admitted that she had diverted Fentanyl to her own use by replacing leftover Fenta-nyl with saline, that she had deliberately ordered excess Fentanyl to ensure that there was leftover, and that she was addicted to Fentanyl. She maintained that she had never abused Fentanyl or any other drug on the job, and no evidence of on-the-job drug use was ever produced by the Hospital.
 

 The Hospital placed Shafer on a medical leave of absence and helped her report to a drug rehabilitation facility. While Shafer was in drug rehabilitation, the Hospital gathered information from persons involved in the investigation and sought legal advice about whether to continue Shafer’s employment. On March 6, 1993 — the day Shafer completed the inpatient portion of her drug rehabilitation program — Adams informed her by telephone that her employment with the Hospital was terminated. In a letter dated March 10, 1993, the Hospital formally notified Shafer that she was discharged for gross misconduct involving the diversion of controlled substances. A few weeks later, Shafer obtained employment at another hospital as a nurse anesthetist under a restricted license. Within two weeks, she used Fenta-nyl while on duty. Her nursing license was subsequently revoked.
 

 Shafer sued Preston Memorial and Adams under the ADA, the Rehabilitation Act, and the WVHRA, claiming that the Hospital and Adams discriminated against her on the basis of her addiction to Fentanyl when it terminated her employment. She sought past and future lost wages and contractual benefits in the amount of $849,339; unspecified damages
 
 *-1300
 
 for mental pain, suffering, anguish, annoyance, inconvenience, loss of benefits, and damaged credit rating; and attorneys’ fees, court costs, and prejudgment and post-judgment interest.
 

 The district court assumed “[flor purposes of summary judgment” that Shafer was “disabled” under the ADA, the Rehabilitation Act, and the WVHRA. (J.A. at 103 n. 8.) The court then examined the merits of Shafer’s claim and determined, relying on our decision in
 
 Little v. FBI,
 
 1 F.3d 255, 259 (4th Cir.1993), and other cases, that Shafer’s “activities involving the diversion of Fentanyl during the course of her employment constituted gross misconduct justifying discharge.” (J.A. at 104.) The district court then determined that Shafer was “unable to offer any credible evidence of pretext,” and granted the Hospital’s motion for “summary judgment on [Shafer’s] claims under the ADA, the Rehabilitation Act, and the West Virginia Human Rights Act.” (J.A. at 106.)
 

 In addition, the district court denied Shafer’s motion to amend her Complaint, holding that any amendment would be futile because “there is no question” that the Hospital would be entitled to summary judgment on the amended Complaint. (J.A. at 108-09.) The district court also denied Shafer’s other motions, finding that her motions to exclude witnesses, to compel sufficient responses from witnesses, and to deem a first request for admissions admitted, were moot in light of its other rulings.
 

 II.
 

 Shafer argues primarily that the district court erred in granting summary judgment for the Hospital and Adams on her claims under the ADA and the Rehabilitation Act.
 
 [3]
 
 The ADA and the Rehabilitation Act prohibit an employer from discriminating against a “qualified individual with a disability” because of that individual’s disability.
 
 See
 
 42 U.S.C.A. § 12112(a) (West 1995) (ADA); 29 U.S.C.A. § 794(a) (West Supp. 1996) (Rehabilitation Act). To establish a violation of either of these statutes, a plaintiff must prove: (1) that she has a disability; (2) that she is otherwise qualified for the employment in question; and (3) that she was excluded from the employment or benefit due to discrimination solely on the basis of the disability.
 
 See Doe v. University of Md. Med. Sys. Corp.,
 
 50 F.3d 1261, 1264-65 (4th Cir.1995) (citing
 
 Gates v. Rowland,
 
 39 F.3d 1439, 1445 (9th Cir.1994)). An individual is not otherwise qualified, however, if she “is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use.” 42 U.S.C.A. § 12114(a) (West 1995) (ADA);
 
 accord
 
 29 U.S.C.A. § 706(8)(C)(i) (West Supp.1996) (Rehabilitation Act). While expressly excluding current drug users from statutory protection, the statutes provide a “safe harbor” for recovering addicts:
 

 (b) Rules of construction
 

 Nothing in subsection (a) of this section shall be construed to exclude as a qualified individual with a disability an individual who—
 

 (1) has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use;
 

 (2) is participating in a supervised rehabilitation program and is no longer engaging in such use; or
 

 (3) is erroneously regarded as engaging in such use, but is not engaging in such use.
 

 42 U.S.C.A. § 12114(b) (West 1995) (ADA);
 
 accord
 
 29 U.S.C.A. § 706(8)(C)(ii) (West Supp.1996) (Rehabilitation Act).
 

 
 *-1299
 
 The parties do not dispute that drug addiction is a disability. However, the Hospital and Adams contend that Shafer is not “otherwise qualified” under the ADA and the Rehabilitation Act because she was “currently engaging in the illegal use of drugs” at the time of her discharge. They contend that “current” illegal use of drugs under the statutes is “not limited to persons who use drugs on the day of the employment action in question, or even within a matter of days or weeks, before the action” (Appellees’ Br. at 10), and that the safe harbor provision does not provide Shafer with protection. Conversely, Shafer argues, relying on the plain language of “currently engaging in the illegal use of drugs,” that she was not a “current” user of drugs when the Hospital fired her because at that time, she was participating in a drug rehabilitation program and was not using drugs.
 

 We review a district court’s grant of summary judgment de novo.
 
 See Higgins v. E.I. DuPont de Nemours & Co.,
 
 863 F.2d 1162, 1167 (4th Cir.1988). Summary judgment is proper only if no material facts are in dispute.
 
 See
 
 Fed.R.Civ.P. 56(c);
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). In deciding whether facts are in dispute, “[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor.”
 
 See Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). In addition, we review questions of statutory interpretation de novo.
 
 See United States v. Davis,
 
 98 F.3d 141, 144 (4th Cir.1996) (citing
 
 United States v. Letterlough,
 
 63 F.3d 332, 334 (4th Cir.),
 
 cert. denied,
 
 — U.S.—, 116 S.Ct. 406 133 L.Ed.2d 324 (1995)).
 

 The dispute centers on the scope of the phrase “currently engaging in the illegal use of drugs.”
 
 See
 
 42 U.S.C.A. § 12114(a); 29 U.S.C.A § 706(8)(C)(i). We have never construed this phrase.
 
 [4]
 
 ‘When confronted with a question of statutory interpretation, our inquiry begins with an examination of the language used in the statute.”
 
 Faircloth v. Lundy Packing Co.,
 
 91 F.3d 648, 653 (4th Cir.1996) (citing
 
 Stiltner v. Beretta U.S.A Corp.,
 
 74 F.3d 1473, 1482 (4th Cir.),
 
 cert. denied,
 
 — U.S. —, 117 S.Ct. 54, 136 L.Ed.2d 18 (1996)),
 
 cert. denied,
 
 — U.S. —, 117 S.Ct. 738, 136 L.Ed.2d 677 (1997). When Congress does not expressly define a statutory term or phrase, a court should “normally construe it in accord with its ordinary or natural meaning.”
 
 Smith v. United States,
 
 508 U.S. 223, 228, 113 S.Ct. 2050, 2054, 124 L.Ed.2d 138 (1993). In most cases, “if the statutory language is plain and admits of no more than one meaning, the duty of interpretation does not arise, and ... the sole function of the courts is to enforce [the statute] according to its terms.”
 
 United States v. Murphy,
 
 35 F.3d 143, 145 (4th Cir.1994) (quotations omitted).
 

 Here, Congress did not define “current” or “currently” under either the ADA or the Rehabilitation Act. Shafer argues for a narrow definition, contending essentially that the statutory language means “at the precise time” or “at the exact moment.” (Appellant’s Br. at 23 “Shafer was not illegally using drugs
 
 at the time
 
 she was terminated -” (emphasis added).) We agree that in some instances the word “currently” modifies actions an individual is engaged in at the present moment.
 
 See Webster’s II New Riverside University Dictionary
 
 337 (1988) (defining “current” as “belonging to
 
 *-1298
 
 the present time” or “now in progress”);
 
 Webster’s Third New International Dictionary
 
 557 (1986) (defining “current” as “in operation at the time actually elapsing,” and “currently” as “at present”). Shafer contends that this narrow definition excludes from statutory protection only those persons engaging in the illegal use of drugs “at present” or during “the time actually passing.” We disagree. “The word ‘current’, when used as an adjective, has many meanings, and definition depends largely on [the] word which it modifies, or subject-matter with which it associated.”
 
 Black’s Law Dictionary
 
 345 (1981). In the ADA and the Rehabilitation Act, “currently” modifies the phrase “engaging in the illegal use of drugs.” Contrary to Shafer’s assertion, the ordinary or natural meaning of the phrase “currently using drugs” does not require that a drug user have a heroin syringe in his arm or a marijuana bong to his mouth at the exact moment contemplated. Instead, in this context, the plain meaning of “currently” is broader. Here, “currently” means a periodic or ongoing activity in which a person engages (even if doing something else at the precise moment) that has not yet permanently ended. For example, “Dr. Hawking is
 
 currently
 
 engaged in scientific research,” and “Star Wars is
 
 currently
 
 playing at a local theater.”
 
 See Webster’s Third New International Dictionary
 
 557 (1986) (providing examples of the broad definition of “currently”). Accordingly, under the plain meaning of the statutes, an employee illegally using drugs in a periodic fashion during the weeks and months prior to discharge is “currently engaging in the illegal use of drugs.”
 

 Accepting Shafer’s definition of the statutory language would produce absurd results. If we were to accept Shafer’s contentions, an employee testing positive for drugs on Monday would not be “currently engaging in the illegal use of drugs” under the statutes despite the fact that his positive test resulted from weekend drug use — a result so “inconsistent with [public] policy and abhorrent to the sense of justice” that rejecting Shafer’s argument is warranted.
 
 Sorrells v. United States,
 
 287 U.S. 435, 449, 53 S.Ct. 210, 215, 77 L.Ed. 413 (1932). Indeed, under such a constrained reading of the statutory language, an employee would be considered “currently engaging in the illegal use of drugs” only if his employer discovered him needle-in-arm or bong-to-mouth and terminated him on the basis of such “current” use. Similarly, if we were to apply Shafer’s interpretation of the safe harbor provision’s phrase “is participating in a supervised rehabilitation program and is no longer engaging in such use,” an employee discovered engaging in the illegal use of drugs could escape responsibility for his actions by immediately enrolling in a drug rehabilitation program. An employer wishing to investigate the circumstances of the employee’s illegal drug use or to defer termination until a meeting of its personnel committee would be prevented from taking any employment action adverse to that employee. In short, applying Shafer’s interpretation of the safe harbor provision would restrict the right of employers to fire drug-using employees to the narrow class of cases where the employer catches the employee
 
 flagrante delicto
 
 and terminates him on-the-spot. Again, such a result would be “inconsistent with [public] policy and abhorrent to the sense of justice.”
 
 Id.
 

 This case confirms our conclusion that applying a narrow definition of the word “currently” would produce absurd results. Shafer admitted after being confronted by co-workers that she illegally used drugs during the weeks and months prior to her discharge and that she stole narcotics from the Hospital to support her addiction less than a month before she was fired. The Hospital placed her on a medical leave of absence, helped her report to a drug rehabilitation facility, carefully reviewed the situation, and discharged her. She then sued, alleging that she was terminated unlawfully because of her addiction to, rather than use of, drugs. In sum, she contends that the Hospital is prohibited from firing her because she entered drug rehabilitation after being caught and because she was not using drugs on the day she was' fired — an absurd application of the statutory language “abhorrent to the sense of justice,”
 
 id.,
 
 and shocking to “the general moral or common sense.”
 
 Crooks v. Harrelson,
 
 282 U.S. 55, 60, 51 S.Ct. 49, 50, 75 L.Ed. 156 (1930).
 

 
 *-1297
 
 In addition, the legislative history makes plain Congress’s intent that the broader meaning of “currently” apply. The Conference Report on the ADA states that the exclusion of persons “currently engaged in the illegal use of drugs” from statutory protection
 

 is intended to ensure that employers may discharge or deny employment to persons who illegally use drugs on that basis, without fear of being held liable for discrimination. The provision is not intended to be limited to persons who use drugs on the day of, or within a matter of days or weeks before, the employment action in question. Rather,
 
 the provision is intended to apply to a person whose illegal use of drugs occurred recently enough to justify a reasonable belief that a person’s drug use is current.
 

 H.R. Conf. Rep. No. 101-596, at 64,
 
 reprinted in
 
 1990 U.S.C.C.A.N. 267, 573 (emphasis added);
 
 see also
 
 29 C.F.R. pt. 1630, App. (1996) (stating that “the provision is intended to apply to the illegal use of drugs that has occurred
 
 recently enough to indicate that the individual is actively engaged in such conduct”
 
 (emphasis added)). The Conference Report further states that the safe harbor provision’s phrase “is participating in a supervised rehabilitation program and is no longer engaging in such use”
 

 does not permit persons to invoke the Act’s protection simply by showing that they are participating'in a drug treatment program. Rather, refraining from illegal use of drugs also is essential. Employers are entitled to seek reasonable assurances that no illegal use of drugs is occurring
 
 or has occurred recently enough so that continuing use is a real and ongoing problem.
 

 Id.
 
 (emphasis added). Thus, the legislative history reveals that Congress intended to exclude from statutory protection an employee who illegally uses drugs during the weeks and months prior to her discharge, even if the employee is participating in a drug rehabilitation program and is drug-free on the day she is fired.
 
 See Collings v. Longview Fibre Co.,
 
 63 F.3d 828, 833 (9th Cir.1995) (reviewing legislative history and concluding that employees who used drugs during the weeks and months prior to their discharge were current users under the ADA, even though they were drug-free on the day they were fired),
 
 cert. denied,
 
 — U.S.—, 116 S.Ct. 711, 133 L.Ed.2d 666 (1996);
 
 McDaniel v. Mississippi Baptist Med. Ctr., 877
 
 F.Supp. 321, 327 (S.D.Miss.1994) (stating that “the Legislative history indicates that Congress had in mind a drug free period of some considerable length”),
 
 aff'd,
 
 74 F.3d 1238 (5th Cir.1995);
 
 Wormley v. Arkla, Inc.,
 
 871 F.Supp. 1079, 1080, 1084 (E.D.Ark.1994) (reviewing legislative history and holding that plaintiff who “was not illegally using drugs on the day of his termination, which was also the day of his release from the rehabilitation program,” was a current user under the ADA because his “drug use was sufficiently recent to justify an employer’s reasonable belief that it was an ongoing problem rather than a problem that was in the past”);,
 
 but see Teah-an v. Metro-North Commuter R.R.,
 
 951 F.2d 511, 518 (2nd Cir.1991) (stating in Rehabilitation Act case that “the relevant time for assessment of [the plaintiffs] ‘current’ status is the time of his actual firing”).
 

 Accepting Shafer’s contentions would produce a result demonstrably at odds with Congress’s intent. In excluding persons currently engaging in the illegal use of drugs from statutory protection, Congress intended to ensure that employers would be able to “discharge or deny employment to persons who illegally use drugs on that basis, without fear of being held liable for discrimination.” H.R. Conf. Rep. No. 101-596, at 64,
 
 reprinted in
 
 1990 U.S.C.C.AN. 267, 573. Accepting Shafer’s argument about the proper meaning of the phrase “currently engaging in the illegal use of drugs” (or accepting her argument about the meaning of the safe harbor provision’s phrase “is participating in a supervised rehabilitation program and is no longer engaging in such use”) would thwart this purpose. Conversely, applying the broader meaning of the statutory language would not undermine the equally important “legislative purpose of ensuring that rehabilitated or rehabilitating individuals are not discriminated against on the basis of past substance abuse.”
 
 Teahan,
 
 951 F.2d at 518. Excluding individuals who, like Shafer, have engaged in the illegal use of drugs in the weeks and months
 
 *-1296
 
 before their termination in no way subverts Congress’s recognition “that many people continue to participate in drug treatment programs
 
 long after
 
 they have stopped using drugs illegally, and that such persons should be protected under the Act.” H.R. Conf. Rep. No. 101-596, at 64,
 
 reprinted in
 
 1990 U.S.C.C.A.N. 267, 573 (emphasis added).
 

 The Equal Employment Opportunity Commission’s (EEOC) Technical Assistance Manual for the ADA also reveals that an employee illegally using drugs during the weeks and months prior to her discharge is a “current” illegal drug user excluded from statutory protection.
 
 [5]
 
 The Technical Assistance Manual provides:
 

 “Current” drug use means that the illegal use of drugs occurred recently enough to justify an employer’s reasonable belief that involvement with drugs is an on-going problem. It is not limited to the day of use, or recent weeks or days, in terms of an employment action. It is determined ■ on a case-by-case basis.
 

 For example:
 
 An applicant or employee who tests positive for an illegal drug cannot immediately enter a drug rehabilitation program and seek to avoid the possibility of discipline or termination by claiming that s/he now is in rehabilitation and is no longer using drugs illegally. A person who tests positive for illegal use of drugs is not entitled to the protection that may be available to former users who have been or are in rehabilitation ....
 

 Equal Employment Opportunity Commission,
 
 A Technical Assistance Manual on the Employment Provisions (Title I) of the Americans with Disabilities Act
 
 § 8.3 (1992) [hereinafter AJD.A.T.A.M.]. Accordingly, only persons who have refrained from using drugs for some time are protected under the statute.
 
 See Baustian v. Louisiana,
 
 910 F.Supp. 274, 276 (E.D.La.1996) (holding that the ADA’s safe harbor provision applies only to a long-term recovery program and requires that the individual be drug-free for a considerable period);
 
 McDaniel,
 
 877 F.Supp. at 328 (same);
 
 cf. United States v. Southern Management,
 
 955 F.2d 914, 919-23 (4th Cir. 1992) (holding under the FHA that plaintiffs who had been drug-free for one year were not current users of drugs). Moreover, an employee who admits to recent drug use only after being caught and confronted — like an employee who fails a drug test — cannot avoid being fired by immediately entering drug rehabilitation and “claiming that s/he now is in rehabilitation and is no longer using drugs illegally.” A.DAT.A.M. § 8.3;
 
 cf. Grimes v. U.S. Postal Serv.,
 
 872 F.Supp. 668, 675 (W.D.Mo.1994),
 
 aff'd,
 
 74 F.3d 1243 (8th Cir. 1996) (distinguishing scenario where a plaintiff voluntarily identifies his addiction from scenario where a plaintiff avoids seeking treatment until after being caught by his employer and holding in Rehabilitation Act case that safe harbor provision does not apply in second scenario).
 

 In light of the plain statutory language, the -relevant legislative history, and the EEOC’s interpretive guidelines, we conclude that an employee illegally using drugs in the weeks and months prior to discharge is a “current” illegal user of drugs for purposes of the ADA and Rehabilitation Act. Consequently, such employees are not protected by the statutes; indeed, they are current users explicitly excluded from statutory protection.
 
 See
 
 42 U.S.C.A. § 12114(a)(ADA); 29 U.S.C.A. § 706(8)(C)(i) (Rehabilitation Act). Shafer admitted using drugs in the weeks and months before her discharge. Under the statutes, her admitted illegal use of Fen-tanyl occurred close enough in time to her discharge to justify the Hospital’s belief that her involvement with drugs was an ongoing problem.
 
 See
 
 H.R. Conf. Rep. No. 101-596, at 64,
 
 reprinted in
 
 1990 U.S.C.CAN. 267, 573;
 
 cf. Collings,
 
 63 F.3d at 833 (holding that employees who had used drugs during the weeks and months prior to discharge were current users under the ADA);
 
 McDaniel,
 
 877 F.Supp. at 327-28 (holding
 
 *-1295
 
 that employee was a current user even though he was drug-free on day of discharge, had been drug-free for six weeks, and had completed two-and-a-half week inpatient drug treatment). Her unfortunate relapse into illegal drug use evidences that the Hospital’s belief was reasonable. Because employers “may discharge or deny employment to persons who illegally use drugs, on the basis of such use, without fear of being held hable for discrimination,” 29 C.F.R. pt. 1630, App. (1996), we affirm the district court’s grant of summary judgment for the Hospital and Adams on Shafer’s ADA and Rehabilitation Act claims.
 
 [6]
 

 III.
 

 The district court also properly rejected Shafer’s WVHRA claim. The district court stated that “given the interrelation of the ADA, the Rehabilitation Act, and the West Virginia Human Rights Act, the Court’s analysis of plaintiffs discrimination claims brought under the three separate statutes can be combined.” (J.A. at 102.) The district court’s analysis was proper because the standards governing the ADA, the Rehabilitation Act, and the WVHRA are coextensive.
 
 See Hosqflook v. Consolidation Coal Co.,
 
 1996 WL 717106, *6-*7 (W.Va. Dec.10, 1996) (analyzing WVHRA claim under ADA framework);
 
 Skaggs v. Elk Run Coal Co.,
 
 479 S.E.2d 561, 1996 WL 391539, *6-*7 (W.Va. July 11, 1996) (same);
 
 cf. Barefoot v. Sundale Nursing Home,
 
 193 W.Va. 475, 457 5.E.2d 152, 159 (1995) (“We have consistently held that cases brought under the West Virginia Human Rights Act ... are governed by the same analytical framework and structures developed under Title VII-”). Because Shafer is not disabled for the purposes of the ADA or the Rehabilitation Act, she is not disabled for the purposes of the WVHRA.
 
 Cf. Williams v. Channel Master Satellite Sys., Inc.,
 
 101 F.3d 346, 350 (4th Cir.1996) (noting that standards under the North Carolina Handicapped Persons Protection Act (NCHPPA) are narrower than under the ADA and holding that “[s]ince [the plaintiff] is not disabled for the purposes of the ADA, she similarly is not disabled for the purposes of the NCHPPA”);
 
 Tyndall v. National Educ. Ctrs., Inc.,
 
 31 F.3d 209, 216 (4th Cir.1994) (noting that standards under the Virginians with Disabilities Act (VDA) “follow the standards established in the federal Rehabilitation Act of 1973 and adopted in the ADA,” and holding that “for the reasons set forth in our analysis of [the plaintiffs] ADA claims, we hold that [her] VDA claims must also fail”). Accordingly, we affirm the district court’s order granting summary judgment for the Hospital and Adams on Shafer’s WVHRA claim.
 

 IV.
 

 Additionally, Shafer argues that the district court erred in refusing to permit her to amend her Complaint by adding counts for breach" of implied contract of employment and punitive damages. She also argues that the district court erred in denying as moot her motions to exclude witnesses, to compel sufficient responses of witnesses, and to deem a first request for admissions admitted.
 

 We review the district court’s refusal to allow Shafer to amend her Complaint for abuse of discretion.
 
 See New Beckley Mining Corp. v. International Union, UMWA,
 
 18 F.3d 1161, 1164 (4th Cir.1994) (citing
 
 Roman v. Davis,
 
 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Similarly, we review the district court’s rulings on discovery matters for abuse of discretion.
 
 See Cohn v. Bond,
 
 953 F.2d 154, 157 (4th Cir.1991) (citing
 
 Sandcrest Outpatient Servs. v. Cumberland County Hosp. Sys., Inc.,
 
 853 F.2d 1139, 1148
 
 *-1294
 
 (4th Cir.1988));
 
 see also Nguyen v. CNA Corp.,
 
 44 F.3d 234, 242 (4th Cir.1995) (holding that a lower court’s decision not to deem requests admitted is reviewed for abuse of discretion).
 

 After carefully reviewing the record and the parties’ briefs, and after hearing argument on these issues, we conclude that the district court did not abuse its discretion. The district court correctly concluded that any amendment to Shafer’s Complaint would have been futile.
 
 Cf New Beckley,
 
 18 F.3d at 1164 (holding that the district court did not abuse its discretion and stating that “[a] court may refuse to allow leave to amend pleadings when the proposed changes would be futile”). Additionally, Shafer is precluded from arguing that inadequate discovery made summary judgment inappropriate because she did not submit an affidavit informing the district court that additional discovery was necessary for her to respond to the Hospital’s summary judgment motion.
 
 See
 
 Fed. R.Civ.P. 56(f);
 
 see also Evans v. Tech. Applications & Serv. Co.,
 
 80 F.3d 954, 961 (4th Cir.1996) (holding that on appeal, a party must have submitted a Rule 56(f) affidavit in order to argue that summary judgment was inappropriate because of inadequate discovery);
 
 Nguyen,
 
 44 F.3d at 242 (same). Accordingly, her motions to exclude witnesses, to compel sufficient responses from witnesses, and to deem a first request for admissions admitted were properly denied.
 

 V.
 

 For the foregoing reasons, we affirm the district court’s order granting summary judgment.
 

 AFFIRMED
 

 [1]
 

 . We have consistently recognized that we may affirm a district court's decision on different grounds than those employed by the district court.
 
 See United States v. Dorsey,
 
 45 F.3d 809, 814 (4th Cir.) (citing
 
 Brewster of Lynchburg, Inc.
 
 v.
 
 Dial Corp.,
 
 33 F.3d 355, 361 n. 3 (4th Cir. 1994)),
 
 cert. denied,
 
 — U.S. —, 115 S.Ct. 2631, 132 L.Ed.2d 871 (1995).
 

 [2]
 

 . "Wasting” is a process at Preston Memorial where nurse anesthetists, who are responsible for ordering Fentanyl for each individual patient, take leftover Fentanyl to the Hospital pharmacy for disposal under the supervision of a pharmacist.
 

 [3]
 

 . Because the relevant provisions of the ADA and the Rehabilitation Act are identical, we combine the analysis of Shafer’s ADA and Rehabilitation Act claims.
 
 See Doe v. University of Md. Med. Sys. Corp.,
 
 50 F.3d 1261, 1264 n. 9 (4th Cir.1995) (combining analysis of plaintiff’s claims under ADA and Rehabilitation Act and stating that because the language of the statutes "is substantially the same, we apply the same analysis to both”);
 
 Tyndall v. National Educ. Ctrs., Inc.,
 
 31 F.3d 209, 213 n. 1 (4th Cir.1994) (noting that "the ADA expressly requires its provisions to be interpreted in a way that 'prevents imposition of inconsistent or conflicting standards for the same requirements’ under the two statutes” (quoting 42 U.S.C.A. § 12117(b) (West 1995))).
 

 [4]
 

 . In
 
 United States v. Southern Management Corp.,
 
 955 F.2d 914 (4th Cir.1992), we compared the Fair Housing Act’s (FHA) declaration that the "term [handicap] does not include current, illegal use of or addiction to a controlled substance,"
 
 see
 
 42 U.S.C.A. § 3602(h) (West 1990), to the ADA’s pronouncement that the "term 'qualified individual with a disability' shall not include any employee or applicant who is currently engaging in the illegal use of drugs,”
 
 see
 
 42 U.S.C.A. § 12114(a), and determined that individuals who had been drug-free for one year were not "current users or addicts” under the FHA.
 
 See Southern Management,
 
 955 F.2d at 919-23. We did not decide in
 
 Southern Management,
 
 however, whether individuals who had been drug-free for less than a year were current users. Shafer, unlike the plaintiffs in
 
 Southern Management,
 
 had been drug-free for less than a year at the time of her termination. Indeed, it is not disputed that she had engaged in the illegal use of drugs less than a month prior to her firing. Thus, although informative,
 
 Southern Management
 
 is not dispositive of the issue before us in this case.
 

 [5]
 

 . " '[W]hile not controlling upon the courts by reason of their authority,' ” the EEOC interpretive guidelines, " ‘do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.' ”
 
 Williams v. Channel Master Satellite Sys., Inc.,
 
 101 F.3d 346, 349 n. 2 (4th Cir. 1996) (quoting
 
 Meritor Sav. Bank, FSB v. Vinson,
 
 477 U.S. 57, 65, 106 S.Ct. 2399, 2404-05, 91 L.Ed.2d 49 (1986)).
 

 [6]
 

 . In granting summary judgment, the district court assumed that Shafer was a qualified individual with a disability but then concluded that she was fired because she stole narcotics, not because she was a drug addict. The record reveals no material factual dispute about the reason for Shafer’s firing; the Hospital fired Shafer because of her misconduct, not her drug addiction. In
 
 Little v. FBI,
 
 1 F.3d 255, 259 (4th Cir. 1993), we held that disabled employees may be discharged for misconduct despite their disability without violating the Rehabilitation Act. Given our holding that Shafer does not qualify for protection under either the ADA or the Rehabilitation Act, however, we have no occasion to pass upon the district court's holding that Shafer was fired for her thievery, not her drug addiction.
 
 See Karsten v. Kaiser Found. Health Plan,
 
 36 F.3d 8, 11 (4th Cir.1994) (per curiam) (noting that alternative holdings should be avoided).