Ivonne **FIGUEROA**, et al., Plaintiffs,

v.

Hon. Victor **FAJARDO**,
et al., Defendants.

No. 96–2120 **(RLA).**

United States District Court,
D. Puerto Rico.

April 2, 1998.

Engandi Rosario, San Juan, PR, Elisa A. Fumero Pérez, Fernández Juncos Station, Santurce, PR, for Plaintiffs.

Mayra Maldonado Colón, Federal Litigation Division, San Juan, PR, for Defendants.

### ORDER DISMISSING COMPLAINT

ACOSTA, District Judge.

Plaintiff, IVONNE FIGUEROA, instituted these proceedings on her own behalf and as guardian of her minor son alleging that her dismissal as a teacher employed with the Department of Education of the Commonwealth of Puerto Rico ("DE") violated the rights secured by the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111–12117; the Rehabilitation Act, 29 U.S.C. § 701–715 (1985 & Supp.1997); the Drug Free Workplace Act of 1989, 41 U.S.C. §§ 701–707 (Supp.1995); the Due Process Clause of the U.S. Constitution; and various local provisions.

Named defendants are: HON. VICTOR FAJARDO, in his personal capacity and as Secretary of Education, ELIZABETH VALENTIN in her personal capacity and as Director of the María Eugenia Rodríguez

Intermediate School and the COMMON-WEALTH OF P.R.

Defendants have moved to dismiss various claims asserted in the amended complaint which plaintiffs have opposed. Although defendants' request is premised on the provisions of Rule 12(b)(6) Fed.R.Civ.P., we shall treat it as a motion for summary judgment since both parties have relied on documents and information outside the pleadings in support of their respective positions. *Maldonado v. Dominguez,* 137 F.3d 1 (1st Cir.1998); *Vega–Rodriguez v. Puerto Rico Tel. Co.,* 110 F.3d 174, 177 (1st Cir.1997); *Rodriguez v. Fullerton Tires, Corp.,* 115 F.3d 81 (1st Cir. 1997).

Summary judgment petitions will be granted where no genuine issues of material fact are present. Further, the court will draw all reasonable inferences in the non-movant's favor. *Springfield Terminal Ry. Co. v. Canadian Pacific Ltd.,* 133 F.3d 103 (1st Cir. 1997).

## I.  *THE FACTS*

Based on the evidence presented in the record the following facts are not in controversy.

1.  Plaintiff IVONNE FIGUEROA was a teacher with regular and permanent status at the DE.

2.  JESUS MANUEL MIRANDA is the minor son of MS. FIGUEROA.

3.  At the time of her dismissal plaintiff was assigned to the Maria Eugenia Rodriguez Intermediate School.

4.  Plaintiff was arrested on **December 16, 1994** for possession with intent to distribute cocaine and marihuana.

5.  On **March 15, 1995** plaintiff was suspended from employment with pay; notified of the DE's intention to file removal charges against her, and of her right to request an administrative hearing.

6.  In response to plaintiff's request, an administrative hearing was held on **April 18** and **May 11, 1995.**

7.  Plaintiff was notified of her termination, the revocation of her teacher's certificate, and the grounds therefore by letter dated August 28, 1995.

8.  At the time of plaintiff's dismissal the DE had in effect a Manual entitled "Programa de Ayuda Ocupacional" ("PAO") issued in compliance with the Drug Free Workplace Act.

9.  Probable cause was found against plaintiff on **July 26, 1995,** for violation of art. 404(a) of the P.R. Controlled Substances Law, P.R. Laws Ann. tit. 24, § 2404(a) (Supp. 1996).

10.  On **November 3, 1995** plaintiff was granted probation for a period of two (2) years conditioned upon entering a detoxication program pursuant to P.R. Laws Ann. tit. 24, § 2404(b)(1) (Supp.1996).

11.  On **June 7, 1996** plaintiff was mailed a right to sue notice by the Equal Employment Opportunity Commission ("EEOC").

12.  The original complaint in this case was filed on **September 16, 1996.**

## II.  *THE LAW*

The arguments presented by defendants in their motion to dismiss will be discussed as follows:

### A.  ADA

#### (1) Timeliness

Defendants allege that the ADA claim is untimely because the complaint was not filed within 90 days from plaintiffs receipt of the right to sue letter. The procedural mechanisms available under Title VII, particularly 42 U.S.C. § 2000e–5, are applicable to ADA suits. *See* 42 U.S.C. § 12117(a). Pursuant to § 2000e–5(f), plaintiff was required to institute this action within 90 days from the receipt of the EEOC notice denying her administrative claim. This limitations period has been found to be non-jurisdictional and is therefore, subject to waiver, estoppel and equitable tolling. *American Airlines v. Cardoza–Rodriguez,* 133 F.3d 111 (1st Cir. 1998); *McKinnon v. Kwong Wah Rest.,* 83 F.3d 498 (1st Cir.1996). For purposes of our ruling, plaintiff argues that she received the notice on **June 10, 1996.** Assuming this date

as correct,[1] the 90 day period expired on **Sunday, September 8, 1996** for which reason it would have been extended to **Monday, September 9, 1996.** However, due to the passage of Hurricane Hortense through Puerto Rico which required complete shutdown of court operations during that week, the District court extended the statute of limitations of actions **up to and including September 23, 1996.**[2]

Accordingly, we find that the complaint was timely filed for purposes of the ADA claims.

### (2) Individual Liability

■ Defendants have moved to dismiss the ADA claims asserted against them personally. We find that ADA "does not provide for individual liability, only for employer liability." *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir.1996). *See also Wathen v. Gen. Elec. Co.*, 115 F.3d 400 (6th Cir.1997); *Morrow v. City of Jacksonville, Ark.*, 941 F.Supp. 816, 819–20 (E.D.Ark.1996); *Anonymous v. Legal Services Corp. of P.R.*, 932 F.Supp. 49, 50 (D.P.R.1996); *Miller v. CBC Companies, Inc.*, 908 F.Supp. 1054, 1065 (D.N.H.1995). This conclusion has been reached by utilizing precedents interpreting the term "employer" as used in Title VII of the 1994 Civil Rights Act, 42 U.S.C. § 2000e(b) and in the Age Discrimination in Employment Act, 29 U.S.C. § 630(b) which the courts have found analogous to the definition of "employer" in ADA. *Wathen*, 115 F.3d at 404 n. 6; *Mason*, 82 F.3d at 1009; *Anonymous*, 932 F.Supp. at 50–51; *Miller*, 908 F.Supp. at 1065. Reference to "any agent of such person" in the definition of employer is not indicative of individual responsibility but is merely to ensure that *respondeat superior* attaches for the conduct of these employees. *Mason*, 82 F.3d at 1009; *Miller*, 908 F.Supp. at 1065.

Based on the foregoing, the claims asserted under ADA against defendants in their personal capacity are unwarranted and are therefore, **DISMISSED.**

### (3) Disability

Defendants further contend that plaintiff is not "disabled" within the meaning of the ADA because she was engaged in the illegal use of drugs. Plaintiff argues that she qualified for ADA protection because she was enrolled in a drug rehabilitation program and was no longer using drugs at the time of her dismissal.

■ In order to qualify for the protection offered by ADA, plaintiff bears the initial burden of establishing that he suffers from a "disability" within the meaning of the Act. *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 14 (1st Cir.1997); *Jacques v. Clean–Up Group, Inc.*, 96 F.3d 506, 511 (1st Cir. 1996). ADA specifically excludes from coverage individuals "currently engaging in the illegal use of drugs" from the definition of "qualified individual with a disability" 42 U.S.C. § 12114(a) and § 12210(a) but does provide protection to persons who have sought rehabilitation and are no longer using drugs. The statute specifically applies to an individual who:

(1) has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use;

(2) is participating in a supervised rehabilitation program and is no longer engaging in such use. . . .

42 U.S.C. § 12210(b).

Since the statute does not offer any additional information on the interpretation of "current" user we must look at the legislative history and the regulations issued by the EEOC for guidance. *Arnold v. United Parcel Serv., Inc.*, 136 F.3d 854 (1st Cir.1998).

According to the House Conference Report on the ADA, "current" illegal use of drugs is not limited to the use of drugs "on the day of, or within a matter of days or weeks before, the employment action in question. Rather, the provision is intended to apply to a person

---

1. It is undisputed that the notice was mailed on **June 7, 1996.**

2. *See* Notice to Counsel and to the Public (96–29) issued by the Clerk of the Court on September 16, 1996.

whose illegal use of drugs occurred recently enough to justify a reasonable belief that a person's drug use is current." Conference Report on S.933, American With Disabilities Act, Joint Explanatory Statement of the Committee of Conference, H.R. Rep. 596, 101st Cong., 2d Sess. (1990), reprinted in 136 Cong. Rec. H4582 (daily ed. July 12, 1990). The Regulations also provide that the illegal use of drugs must have taken place recently enough to justify the employer's reasonable belief that drug use is a continuing problem. *See also* EEOC's Interpretative Guide to 29 C .F.R. § 1603.3, App. B to its Technical Assistance Manual on the Employment Provisions (Title I) of the ADA (1992).

The words "at present" does not mean that drugs must have been taken at the precise moment the person is fired. That is to say, the test is not whether on a particular date plaintiff was free from drugs but whether it was recent enough to justify the employer's reasonable belief that plaintiff's drug use is current. ADA protection is limited to "persons who have refrained from using drugs for some time." *Shafer v. Preston Mem. Hosp. Corp.,* 107 F.3d 274, 280 (4th Cir.1997). *See also Collings v. Longview Fibre Co.,* 63 F.3d 828 (9th Cir.1995) (passing drug test shortly after discharge did not establish plaintiffs were not current drug users); *Baustian v. State of La.,* 910 F.Supp. 274, 276 (E.D.La.1996) (employee who was drug-fee for seven weeks had not abstained long enough to be protected as a "recovering drug addict"; claimant must be "drug-free for a considerable period and in recovery long enough to have become stable."); *McDaniel v. Miss. Baptist Med. Center,* 877 F.Supp. 321, 327 (S.D.Miss.) *aff'd* 74 F.3d 1238 (5th Cir.1995) (statute requires long term rehabilitation process; Congress had in mind "a drug free period of some considerable length.")

Plaintiff argues that she is not a "current" user because at the time she was fired she was allegedly not using drugs and was in a rehabilitation program. However, an employee may not create a safe harbor against discharge by seeking rehabilitation when being confronted with this contingency.

An [ ] employee who tests positive for an illegal drug cannot immediately enter a drug rehabilitation program and seek to avoid the possibility of discipline or termination by claiming that s/he now is in rehabilitation and is no longer using drugs illegally. A person who tests positive for illegal use of drugs is not entitled to the protection that may be available to former users who have been or are in rehabilitation.

EEOC, Technical Assistance Manual on the Employment Provisions (Title I) of ADA, § 8.3 (1992).

Furthermore, plaintiff having conceded to testing positive for drugs while enrolled in a rehabilitation program [3] is estopped from denying being a "current" user for purposes of the statute. *See Wormley v. Arkla, Inc.,* 871 F.Supp. 1079, 1084 (E.D.Ark.1994) (resumption of drug use after rehabilitation efforts can constitute current use justifying dismissal).

The fact that the administrative proceedings lasted various months, enough for plaintiff to enroll in a rehabilitation program to avoid criminal conviction is of no consequence. An employer must be given an adequate period of time to conduct a meaningful investigation prior to dismissing an employee. Otherwise, "[a]n employer wishing to investigate the circumstance of the employee's illegal drug use or to defer termination until a meeting of its personnel committee would be prevented from taking any employment action adverse to that employee [because it would provide the employee with an opportunity to claim detoxification]." *Shafer,* 107 F.3d at 278.

Accordingly, we find that plaintiff was not protected by the ADA provisions since she was a "current" user within the meaning of the Act.

**(4) Discrimination**

Assuming plaintiff qualifies as a "disabled" individual within the meaning of ADA, she would still have to establish discriminatory motive, i.e., that she was dismissed by reason of her drug dependency.

3. *See* Answer to Motion to Dismiss... filed on    August 19, 1997 (docket No. 44) n.5.

ADA protects disabled individuals from discrimination. Therefore, as part of her burden plaintiff must present evidence that she suffered "an adverse employment action **because** of that disability", that is, as part of her *prima facie* case plaintiff must present "evidence suggesting the presence of [a] disability-based discrimination." *E.E.O.C. v. Amego, Inc.*, 110 F.3d 135, 142 (1st Cir.1997) (emphasis ours). It is plaintiff's burden to prove the necessary causal relationship between her disability and the termination from employment. *Champagne v. Servistar Corp.*, 138 F.3d 7 (1st Cir.1998). That is, plaintiff must have been dismissed "because of" her drug dependency condition.

In this regard, we must distinguish between the particular conduct of a disabled individual and the disabling condition *per se*. In this particular case, "Courts have recognized a distinction between termination of employment because of misconduct and termination of employment because of a disability." *Collings v. Longview Fibre Co.*, 63 F.3d at 832; *Champagne*, at 11 (plaintiff failed to establish "causation" since dismissal due to falsification of log books in violation of company policy and regulations not by reason of a disability).

■ The undisputed facts in this case establish that plaintiff's termination was prompted by her illegal possession of drugs. As will be discussed further in this Order, this constitutes misconduct which, albeit outside the place of employment, was sufficiently connected to her role as a teacher to run afoul of the applicable statutes and regulations. Thus, we can reasonably conclude that plaintiff's termination as a teacher resulted from her own misconduct and not from her drug dependency. Based on the foregoing, we find that plaintiff has failed to bear her burden of establishing discrimination within the meaning of ADA.

## B. REHABILITATION ACT

■ The courts have analyzed the claims asserted under the ADA and the Rehabilitation Act under the same standards due to the similarities between the relevant provisions for both statutes. *See Shafer v. Preston Mem. Hosp. Corp.*, 107 F.3d at 276 n. 3;

Amy L. Hennen, *Protecting Addicts in the Employment Arena: Charting a Course Toward Tolerance*, 15 Law & Ineq. J. 157, 172 (winter 1997) ("courts have treated ADA and Rehabilitation Act cases identically in analyzing whether a prima facie case has been established and whether the addict should be afforded protection.").

Initially, we will dismiss the claims asserted against defendants in their individual capacity based on the same reasoning previously utilized for the ADA cause of action.

The Rehabilitation Act excludes from the definition of an "individual with a disability" any person "who is currently engaging in the illegal use of drugs" 29 U.S.C. § 706(8)(C)(i) (Supp.1997) but protects any individual with a disability who:

(I) has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use;

(II) is participating in a supervised rehabilitation program and is no longer engaging in such use....

29 U.S.C. § 706(8)(C)(ii) (Supp.1997).

It is plaintiff's burden to establish that she is disabled within the meaning of this statute. The fact that at the time the administrative proceedings concluded and her dismissal became effective plaintiff was receiving rehabilitation services is not conclusive. The crucial determination is whether her drug use was "recent" enough for the DE to reasonably conclude that she still had the substance dependency condition.

As previously discussed, we find that because plaintiff fell within the definition of "current" user she cannot invoke the protections of the Rehabilitation Act either. Further, her dismissal resulted from misconduct occurring outside her workplace and not due to any statutory-based "disability". *See Taub v. Frank*, 957 F.2d 8 (1st Cir.1992) (appellate court upheld dismissal for possession with intent to distribute drugs in suit brought under Rehabilitation Act; dismissal prompted by drug-related misconduct not job performance or addiction).

Accordingly, we find that plaintiff's dismissal was not violative of the Rehabilitation Act either.

## C. DRUG FREE WORKPLACE ACT

■ Plaintiff also claims that her dismissal was contrary to the provisions of the Drug Free Workplace Act of 1988, 41 U.S.C. § 701–707 (Supp.1997). It is plaintiff's position that the DE violated her rights under the statute by having failed to provide her with an opportunity for rehabilitation after her arrest. We find that because the illegal activity at issue took place outside the work setting and after duty hours its provisions are inapposite.

This particular statute aims at reducing the use of drugs by employees of federal contractors or federal grant recipients by conditioning the flow of funds to the establishment of drug awareness programs as well as rehabilitation assistance for the employees. It requires that a written policy on this matter be distributed to the employees and that they be notified of the specific administrative consequences which will be imposed for violations thereof.

It is evident from the statute as well as the policy guidelines issued thereunder, that its application is circumscribed to **work-related** problems caused by drug use. Rehabilitation opportunities will only come into play if either: (1) the employee voluntarily discloses the drug-related condition to his supervisor, or (2) the supervisor confronts the employee with the situation after having noticed **problems at work**. Further, only convictions for violations taking place in the **workplace** are covered.

The Drug Free Workplace Act, at 41 U.S.C. § 702(a)(1), provides that no federal grants shall be furnished to a state agency [4] unless it certifies that it will provide a drug-free workplace by:

(A) publishing a statement notifying employees that the unlawful manufacture, distribution, dispensation, possession, or use of a controlled substance is prohibited in the grantee's **workplace** and specifying the actions that will be taken against the employees for violations of such prohibition;

(B) establishing a drug-free awareness program to inform employees about-

(i) the dangers of drug abuse in the **workplace;**

(ii) the grantee's policy of maintaining a drug-free **workplace;**

(iii) any available drug counseling, rehabilitation, and employee assistance programs; and

(iv) the penalties that may be imposed upon employees for drug abuse violations;

(C) making it a requirement that each employee... be given a copy of the statement required in subparagraph (A);

(D) notifying the employee in the statement... that as a condition of employment... the employee will-

(i) abide by the terms of the statement; and

(ii) notify the employer of any criminal drug statute **conviction for violation occurring in the workplace** no later than 5 days after such conviction.

(emphasis ours).

In order to implement the requirements of the statute, the DE issued the PAO. The provisions of this Manual are applicable only to those employees "whose efficiency and productivity **at work**" is affected by the use of drugs and to those situations where the **performance of his/her duties as a public employee** are being affected by the use of drugs. PAO Part III at 5 (emphasis ours). The PAO seeks to provide alternatives and rehabilitation to employees undergoing drug problems which are "affecting their **behavior in the work setting**". PAO Part IV at 5 (emphasis ours). In order to benefit from the PAO options (1) the employee may request assistance or (2) his supervisor may suggest rehabilitation upon identifying a **deterioration in the performance of the employee's duties.** PAO Part XVI at 12–13.

Therefore, only drug dependency conditions which are either (1) voluntarily disclosed by the employee, or (2) detected by an

---

4. Similar requirements are imposed upon federal government contractors. *See* 41 U.S.C. § 703.

employer because they are affecting work performance are covered by the aforementioned provisions. Drug-related incidents which take place **outside** the work setting and are not otherwise connected with the work environment are not contemplated within the rehabilitation options provided by the statute and the policy guidelines.

Plaintiff has not alleged that she petitioned rehabilitation services prior to her arrest nor has she identified any instance of having been approached by a supervisor because her performance as a teacher was being affected by her substance dependency condition. On the contrary, it is undisputed that the administrative steps which lead to her dismissal were initiated **after and as a result of** her arrest for possession of drugs with intent to distribute during off-working hours.

Accordingly, plaintiff's claims under the Drug Free Workplace Act are hereby **DISMISSED.**

### D. DUE PROCESS

■ The Fourth Cause of Action of the Amended Complaint alleges violations to plaintiff's due process rights. Plaintiff claims that her permanent position as a teacher entitled her to due process guarantees prior to her dismissal which were not complied with.

We find that plaintiff was afforded adequate procedural due process as provided for in the DE organic laws. *See Donovan v. Ritchie*, 68 F.3d 14 (1st Cir.1995) (procedural due process satisfied if adequate notice of charges and opportunity to present evidence on own behalf are provided); *Gilbert v. Homar*, 520 U.S. 924, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997). The pertinent statute provides ample procedural safeguards to guarantee plaintiff's rights.[5] The dismissal letter, dated August 28, 1995, relates the steps taken by the DE in response to plaintiff's arrest which lead from the initial suspension with pay to the eventual termination and cancellation of her teacher's license. The termination notice specifically mentions the fact that probable cause was found

against her for violations of the P.R. Substances Control Act arising from events occurring on December 16, 1994; that she had been notified of the DE's intention of filing charges against her based on those events, and of her right to petition an administrative hearing. Upon plaintiff's request, an administrative hearing was held on April 18 and May 11, 1995 where she appeared *pro se.*

The administrative hearing examiner concluded that the evidence in the record was sufficient to uphold the charges in that her conduct had affected the good name of the school were she taught and she had marred the exemplary conduct required of all teachers. Specifically, it has determined that she had violated P.R. Laws Ann. tit. 18, § 274 (Supp.1996) and sec. 10.3 of the Regulation of the Teaching Personnel of the Department of Education of January 27, 1984 which empower the Secretary to cancel the certificate for immoral conduct or conduct injurious to the reputation of the educational system. Further, her conduct was found to be contrary to the "unimpeachable moral conduct" standard required of all teachers. *See* P.R. Laws Ann. tit. 18, § 264(2) (Supp.1996); *see also Vélez-Quiñones v. Secretary of Educ.*, 86 P.R.R. 717, 724 (1962) ("certain standards of conduct which have no equivalence in the private enterprise are required of certain public employees such as . . . [a] teacher").

Plaintiff insists that she was never "convicted" but instead was allowed to benefit from the provisions of P.R. Laws Ann. tit. 24, § 2404(b)(1) (Supp.1996) whereby, as a first time offender, the criminal charges would be dismissed upon completion of the conditions of probation. However, her termination did not result from a criminal conviction but from transgressions to various DE statutes and regulations. Further, adverse employment decisions may be based on the same underlying facts as criminal proceedings and are not dependent on their outcome. Since the burden of proof for each proceeding is different, the fact that an employee is absolved of criminal charges does not preclude

---

**5.** Plaintiff was entitled to notice, a hearing, an opportunity to challenge the evidence available against her, present evidence on her own behalf

and judicial review. *See* P.R. Laws Ann. tit. 18, §§ 274a–274h (1989 & Supp.1996).

termination from employment based on the same conduct charged.

Given the uncontested evidence in possession of the DE at the time of its determination we fail to see what additional proof was required for the DE to make its determination that plaintiff's possession of illegal drugs was detrimental to the educational system and ran contrary to the good moral example required from teachers. It is uncontested that plaintiff was in possession of illegal drugs in December 1994 and that this fact was amply publicized in the local press. We are hard pressed to quarrel with the DE's findings that such conduct by a teacher is damaging to the reputation of a particular institution and to the system as a whole. We disagree with plaintiff's arguments that the DE was required to specifically prove **actual** damaging effects by her conduct. Teachers are held to a higher moral standard precisely because they are role models for students and society in general.

Based on the foregoing, we find that the undisputed facts show "fully that [plaintiff] lacked moral conduct above reproach and the irreproachable reputation so essential to the teaching profession required by statute". *Vélez Quiñones*, 86 P.R.R. at 726.

Accordingly, her due process claim is also **DISMISSED**.

### E.  SUPPLEMENTAL CLAIMS

It is further ORDERED that since the federal claims have been disposed of, all supplemental claims are likewise **DISMISSED WITHOUT PREJUDICE**. *See Ruiz v. Posadas de San Juan Assoc.*, 124 F.3d 243, 247 (1st Cir.1997).

### III.  *CONCLUSION*

Based on the foregoing, the Motion to Dismiss and Brief in Support Thereof, filed by defendants on August 19, 1997 (docket No. 40) [6] is hereby **GRANTED** and all claims asserted under the (1) ADA; (2) Rehabilitation Act; (3) Drug Free Workplace Act; and (4) Due Process Clause are hereby **DISMISSED**.

It is further ORDERED that all claims asserted under the Puerto Rico discrimination and torts statutes be and the same are hereby **DISMISSED WITHOUT PREJUDICE.**

Judgment shall be entered accordingly.

IT IS SO ORDERED.

---

6.  *See* Plaintiffs' Answer to Motion to Dismiss... filed on August 19, 1997 (docket No. 44).