**Douglas J. HOFFMAN, Plaintiff,**

v.

**MCI WORLDCOM COMMUNICATIONS, INC., Defendant.**

**No. CIV.A. 300CV40(JCH).**

United States District Court,
D. Connecticut.

Dec. 28, 2001.

153

Kevin D. O'Leary, Robert J. Gallo, II, Cummings & Lockwood, Hartford, CT, for Defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
### [DKT. NO. 18]

HALL, District Judge.

In this case, plaintiff Douglas Hoffman ("Hoffman") alleges defendant MCI Worldcom Communications, Inc. ("MCI") violated the Americans with Disabilities Act ("ADA") and the Connecticut Fair Employment Practices Act by giving him a negative performance evaluation and terminating him based on his addiction to cocaine and alcohol. The defendant moves for summary judgment on the basis that the plaintiff does not satisfy the prima facie case for a discrimination action under the federal and state statutes.

## I. BACKGROUND

Hoffman worked for MCI or its predecessors from 1992 until March 26, 1999. He has used cocaine from 1992 to the present. From 1992 to 1997, Hoffman used cocaine once or twice a week. During the spring of 1997, the plaintiff was arrested on drug charges, and the arrest was reported in several newspapers. Hoffman received a positive performance review for 1997. In September 1997, MCI promoted Hoffman from a position in Major Accounts to a new department under Dan Shepard for National Accounts.

Although Hoffman stopped using cocaine for a brief period after his arrest in 1997, by the time he was promoted, the plaintiff was using cocaine regularly. Shepard sent Hoffman several e-mails in late 1997 and early 1998 regarding problems with Hoffman's attendance at staff meetings and with his paperwork, which Hoffman attributes to Shepard's stricter

John R. Williams, Williams & Pattis, New Haven, CT, for Plaintiff.

management style. Shepard eventually placed Hoffman on probation for ninety days. During 1998, Hoffman alleges he made several statements to various MCI executives, including Shepard, that he used cocaine. Hoffman's cocaine and alcohol use increased to at least four times a week beginning approximately September 1998.

Hoffman did not close on any accounts after joining Shepard's department. He alleges that MCI did not provide contact lists or account prospects. Also, he claims that MCI handed his existing accounts, solicited while working for Major Accounts, to other employees and gave other employees credit for accounts he started at National Accounts. Hoffman claims that when MCI terminated his employment, he was near closing an account that would have satisfied his sales quota for several years. He alleges that after his termination he assisted an MCI employee in closing on the account. In November 1998, Shepard gave Hoffman a negative performance evaluation for his work during the 1998 year, which Hoffman signed on February 1, 1999.

In September 1998, MCI merged with Worldcom, Inc. After the merger, MCI reorganized and 600 employees were laid off between December 1998 and the first quarter of 1999. In January 1999, Shepard started in a new department and placed at least three of his former employees, including Hoffman, on a list for reassignment to other departments. Hoffman was not assigned to a different department. MCI alleges that the failure to reassign Hoffman should have resulted in his earlier termination but for an administrative error. When Shepard brought Hoffman's unassigned status to the attention of the human resources department, Lois Cavalier contacted Hoffman to confirm his unassigned status and that he was still working. On March 26, 1999, an MCI representative left a message for Hoffman informing him that his employment was terminated. Because of another administrative error, however, Hoffman remained on the payroll until late May 1999.

Before his termination, Hoffman entered an out-patient drug rehabilitation program at Hall–Brooke Foundation on February 24, 1999. He remained a full-time employee at MCI while in the program and testified that he stopped using drugs on a regular basis. Hoffman was in the rehabilitation program when he was terminated on March 26, 1999.

It is undisputed that Hoffman's addiction does not affect all his major life activities. He lives alone, pays his bills, maintains a romantic relationship, and socializes. He alleges, however, that his addiction periodically prevents him from caring for himself and requires hospitalization. Hoffman worked full time before and after his termination for MCI and for DSL.net, Hoffman's subsequent employer. In fact, he perceived himself as working harder than his fellow employees in most cases. Hoffman voluntarily left his employment at DSL.net in August 1999 and has been unemployed since that time. At the time of his deposition, he was preparing for the Series 7 stockbroker examination. He alleges that he has since postponed taking the test because of his addiction.

## II. DISCUSSION

Summary judgment is only appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107 (2d Cir.2000). The burden of showing that no genuine factual dispute exists rests upon the moving party. *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir.

2000) (citing *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir.1994)). In assessing the record to determine if such issues do exist, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 721 (2d Cir.1994). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. When reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir.2000).

■ A prima facie case of discrimination under the Americans with Disabilities Act requires the plaintiff to establish: (1) he has a disability covered by the ADA; (2) the defendant had notice of his disability; (3) with reasonable accommodation he could perform the essential functions of the job; and (4) the defendant refused to make such accommodations. *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir.1999). Drug and alcohol addiction satisfies the disability prong, but the ADA specifies the circumstances under which addiction will be considered a disability.

Section 12114 of Title 42 of the United States Code states that employees "currently engaging in the illegal use of drugs" are not covered under the ADA. 42 U.S.C. § 12114(a) (2001). Current drug use is not limited to use "on the day of, or within a matter of days or weeks before, the employment action in question. Rather, the provision is intended to apply to illegal use of drugs that has occurred recently enough to indicate that the individual is actively engaged in such conduct." Equal Employment Opportunity Commission, Interpretative Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. pt. 1630, app. § 1630.3 (2001) [hereinafter "EEOC Guidelines"] (citing H.R. Conf. Rep. No. 101–596, 101st Cong., 2d Sess. 64 (1990)).

■ An employee is still covered under the ADA, however, if he "is participating in a supervised rehabilitation program and is no longer engaging in [illegal drug] use."[1] *Id.* § 12114(b)(2). " '[R]ehabilitation program' refers to both in-patient and out-patient programs." EEOC Guidelines, *supra*, § 1630.3. The employee, however, still bears the burden of showing "that [he] satisf[ies] the requirements of these definitions in order to be protected by the ADA." *Id.*

■ In this case, Hoffman admits to using drugs during the period he received the negative performance review. He also admits to regular, heavy drug use for six months before he entered drug treatment,

---

**1.** The statute also includes an employee as stating a claim of disability if he "is erroneously regarded as engaging in [illegal drug] use, but is not engaging in such use." *Id.* § 12114(b)(3). Hoffman's complaint does not mention perception of disability as a theory for his cause of action, but his counsel raised the issue in the opposition to the summary judgment motion. Without addressing the plaintiff's failure to plead allegations for such a claim, his argument fails on the merits because § 12114 only recognizes disability premised on erroneous perception of drug use. Hoffman has admitted that he used drugs over an extended period of time while employed, so any perception of drug use by MCI would not be erroneous. Accordingly, the court does not address perception as a basis for Hoffman's disability.

a month before his termination.[2] During this six-month period, Shepard placed Hoffman on a list for reassignment and MCI did not reassign Hoffman. These decisions during the reorganization period, rather than Hoffman's technical termination on March 26, were the employment actions that resulted in Hoffman's termination. Assuming *arguendo* that MCI's performance review and termination of Hoffman had some relation to his drug use, Hoffman's current use during the relevant periods disqualifies him as an individual with a disability under the ADA.[3] Therefore, MCI is entitled to summary judgment because the plaintiff was "currently engaging in illegal drug use" when MCI took action.

 The court notes that, if it considered the relevant employment action to be Hoffman's technical termination, then a month of abstinence while in a supervised rehabilitation program may qualify Hoffman for protection under the ADA for his termination claim because he was not currently engaging in illegal drug use. Accordingly, as an alternative ground for summary judgment, the court concludes as a matter of law that MCI did not have notice of Hoffman's disability. Hoffman provides only minimal circumstantial evidence that MCI knew about his drug use. Pl. Local R. 9(c)2 Statement ¶ 1–3. Drug use, however, is not addiction, and addiction is not necessarily a disability. *Buckley v. Consol. Edison Co.*, 127 F.3d 270, 274 (2d Cir.1997) ("[I]t is important to emphasize that past drug *addiction*, not merely past use, is required to make out a claim under the ADA.").

Properly characterized, Hoffman's disability at the time he was terminated would be his addiction as manifested by his participation in the drug treatment program. MCI's prior notice of Hoffman's drug use is not notice of his disability because MCI had no actual or constructive notice of Hoffman's participation in the drug treatment program, addiction, or record of addiction, which would be the bases for his disability claim. If Hoffman had informed MCI that he entered the drug treatment program and abstained from drug use for a month, then he may have been protected under the ADA because his drug use would no longer be a current and continuing problem and MCI would have notice that Hoffman suffered from an addiction.[4] Yet, Hoffman has only presented evidence that MCI may have known about his drug use, not the addiction and not the drug treatment program. Therefore, MCI is entitled to summary judgment because the undisputed facts establish that MCI did not have notice of any disability that might entitle Hoffman to ADA protection.

2. Hoffman's 9(c)2 Statement admits regular use of cocaine through March 1999. Def. Local R. 9(c)1 Statement ¶ 11. As noted later in this ruling, an admission of current drug use at the time of termination would bar any recovery under the ADA. After reviewing the record cited by MCI, Hoffman Depo. 83–84, the court concludes, for purposes of this motion, that Hoffman's testimony only indicates current drug use until February 1999 and presumes that he stopped using drugs when he entered the rehabilitation program.

3. Also, in the context of the performance review, the ADA permits employers to hold employees to the same performance standards as other employees, without regard for the employee's drug use. 42 U.S.C. § 12114(c)(4) ("[Employers] may hold an employee who engages in the illegal use of drugs ... to the same qualification standards for ... job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the drug use ... of such employee.").

4. As noted before, the court is assuming for purposes of this motion that the defendant terminated the plaintiff for some reason related to Hoffman's drug use.

■ Hoffman also alleges violations of state employment discrimination statutes. Connecticut "often look[s] to federal employment discrimination law for guidance in enforcing [its] own antidiscrimination statute." *State v. Comm'n on Human Rights & Opportunities,* 211 Conn. 464, 470, 559 A.2d 1120 (1989). The plaintiff does not provide any basis for the court to give the state cause of action a different interpretation than the ADA claim. Therefore, the court concludes that MCI is entitled to summary judgment for the state claims based on the undisputed facts that Hoffman was currently engaging in drug use at the time of MCI's employment actions and that MCI did not have notice of Hoffman's disability.

For the foregoing reasons, the defendant's Motion for Summary Judgment [Dkt. No. 18] is GRANTED.

**SO ORDERED.**