FILED
United States Court of Appeals
Tenth Circuit

April 19, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

---

PETER KARL MAUERHAN; ROGER
G. SEGAL, Chapter 7 Trustee of the
bankruptcy case of Peter Mauerhan,

     Plaintiffs-Appellants/
     Cross-Appellees,

v.

WAGNER CORPORATION,

     Defendant-Appellee/
     Cross-Appellant

Nos. 09-4179 & 09-4185

---

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:06-CV–00979-BSJ)**

---

Submitted on the Briefs:

April Hollingsworth of Hollingsworth Law Office, LLC, Salt Lake City, Utah, on
the briefs for Plaintiffs-Appellants/Cross-Appellees.

Cass C. Butler and Michael D. Stanger of Callister Nebeker & McCullough, Salt
Lake City, Utah, on the briefs for Defendant-Appellee/Cross-Appellant.

---

Before **MURPHY**, **SEYMOUR**, and **O'BRIEN**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Peter Karl Mauerhan, joined by the trustee of his bankruptcy estate, Roger G. Segal, brought suit against his former employer, Wagner Corporation ("Wagner"), for allegedly violating the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 et seq., by discriminating against him because of his drug addiction. The district court granted Wagner's motion for summary judgment under the ADA. We exercise jurisdiction under 28 U.S.C. § 1291, and affirm.[1]

# I.

## A. Mr. Mauerhan's Employment

Mr. Mauerhan worked as a sales representative for Wagner from 1994 until June 2005. In 2004, Mr. Mauerhan voluntarily entered into an outpatient drug rehabilitation program. The program met in the evenings and did not interfere with Mr. Mauerhan's work schedule, but Wagner was aware of his participation in the program.

On June 20, 2005, Wagner asked Mr. Mauerhan to take a drug test. Mr. Mauerhan admitted that he would test positive for drugs, but also submitted to the test. He was fired that day for violating Wagner's drug policy, but was told by one of his superiors that he could return to Wagner if he could get clean. On July

---

[1]As detailed below, Wagner also requested summary judgment based on bankruptcy issues that arose in this case. *See* discussion *infra*, Part I.B.-D. The district court denied this motion for summary judgment. Since we affirm the district court's decision under the ADA, we need not reach the bankruptcy and judicial estoppel issues raised by Wagner on appeal.

6, 2005, Mr. Mauerhan entered an inpatient drug rehabilitation program. Upon entering the program, he tested positive for cocaine and THC (marijuana). He completed the program on August 4, 2005. A report issued by his rehabilitation counselor described Mr. Mauerhan's recovery prognosis at discharge as "guarded."

The day after he completed the program, Mr. Mauerhan contacted Wagner and asked to return to work. Mr. Mauerhan was told that he could return to work, but that he would not receive the same level of compensation as he had previously received or be able to service the same accounts he had prior to his discharge.[2] Mr. Mauerhan refused to accept these new terms and declined Wagner's offer.

In a sworn declaration, Mr. Mauerhan represented that he has remained drug-free since entering the inpatient rehabilitation program in July 2005.

## B. Mr. Mauerhan's Bankruptcy Case

In December 2004, Mr. Mauerhan and his wife filed for Chapter 13 bankruptcy. This bankruptcy case was dismissed on July 5, 2005. In August 2005, they re-filed for bankruptcy under Chapter 7. Mr. Roger Segal was appointed trustee of the Mauerhans' bankruptcy estate. Mr. Mauerhan did not list a potential discrimination suit against Wagner as an asset of the bankruptcy estate in the initial disclosure schedules.

---

[2]The exact terms of the offer are disputed, but are not relevant for our purposes.

On December 2, 2005, the bankruptcy court granted the Mauerhans a discharge of their debts and closed the bankruptcy case.

**C. Mr. Mauerhan's Discrimination Claim**

According to Mr. Mauerhan, he was unaware that he had a potential discrimination claim against Wagner until September 2005, when he accompanied a friend to speak with an attorney about a potential claim the friend had against Wagner. During that meeting, the attorney suggested Mr. Mauerhan had a viable discrimination claim against Wagner. In October 2005, after filing for Chapter 7 bankruptcy but before that case was closed, Mr. Mauerhan filed a timely Charge of Discrimination against Wagner with the Equal Employment Opportunity Commission ("EEOC").

Mr. Segal first learned of Mr. Mauerhan's Charge of Discrimination from Wagner's counsel on December 1, 2005. Mr. Mauerhan subsequently filed an amended schedule with the bankruptcy court, which listed his discrimination claim as part of the bankruptcy estate, and Mr. Segal moved to reopen the Chapter 7 bankruptcy case. The bankruptcy case was reopened, with Mr. Mauerhan's claim against Wagner added to the bankruptcy estate.

**D. District Court Proceedings**

In 2006, Mr. Mauerhan, joined by Mr. Segal, brought suit against Wagner, alleging his former-employer violated the ADA by discriminating against him on the basis of his status as a drug addict. In response, Wagner filed two motions for

summary judgment. In the first motion, Wagner argued that Mr. Mauerhan was a current drug user within the meaning of the ADA when he asked to be rehired, and, as such, was not a qualified individual with a disability as required for ADA protection. Wagner also contended that even if Mr. Mauerhan had a protected disability under the ADA, its offer to reinstate him satisfied any legal obligation it may have had to him.

In its second summary judgment motion, Wagner alleged Mr. Mauerhan and Mr. Segal failed to properly exhaust their administrative remedies. According to Wagner, Mr. Mauerhan's Charge of Discrimination was void because his discrimination claim was property of the bankruptcy estate and subject to a bankruptcy stay.[3] Wagner claimed, "[B]y filing the Charge, Mr. Mauerhan violated the automatic stay by exercising control over an asset that was not his, but was rather the property of the bankruptcy estate." Aplt. App., vol. I at 49. Additionally, Wagner contended that judicial estoppel should bar Mr. Mauerhan's recovery because he failed to disclose his discrimination claim to the bankruptcy court until after the bankruptcy case had closed.

The district court granted summary judgment to Wagner under the ADA, concluding that Mr. Mauerhan was unprotected by the statute because he was a

_____

[3]When an individual files for bankruptcy, all interests of the debtor become property of the bankruptcy estate, including causes of action. *See* 11 U.S.C. § 541(a)(1); *In re Hedged-Investments Assocs., Inc.*, 84 F.3d 1281, 1285 (10th Cir. 1996). The trustee of the bankruptcy estate has the sole capacity to sue and be sued over assets of the estate. *See* 11 U.S.C. § 323(b).

"current" drug user at the time he sought reemployment. The court denied Wagner's second motion for summary judgment on the bankruptcy issues. It found that Mr. Segal's participation in the lawsuit rectified any problems that may have existed with the charge of discrimination, and that judicial estoppel was inappropriate under the facts of this case. This appeal followed.

## II.

Summary judgment is available "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). In doing so, we view the evidence in the light most favorable to the nonmoving party. *Id.* We may "affirm the district court's grant of summary judgment on any ground adequately supported by the record." *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1215 (10th Cir. 2010).

The ADA prevents employers from discriminating "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, the plaintiff must show: (1) he is a "disabled" person under the ADA; (2) he is qualified to perform the essential functions of the job in question; and (3) he was discriminated against because of

his disability.  *Butler v. City of Prairie Village*, 172 F.3d 736, 748 (10th Cir.

1999).  To defeat summary judgment, a plaintiff must raise a genuine dispute of

material fact on each element of the prima facie case.  *MacKenzie v. Denver*,  414

F.3d 1266, 1274 (10th Cir. 2005); *see also* Fed. R. Civ. P. 56(a).

Although the "status of being an alcoholic or illegal drug user may merit

[ADA] protection," *Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 609 (10th Cir.

1998), an employee or job applicant is not "a qualified individual with a

disability" if he or she "is currently engaging in the illegal use of drugs, when the

covered entity acts on the basis of such use."  42 U.S.C. § 12114(a).  But the ADA

also creates a "safe harbor" for those who are not currently engaging in the illegal

use of drugs.  The ADA specifically exempts from the exclusion of § 12114(a) an

individual who:

> (1) has successfully completed a supervised drug rehabilitation program and
> is no longer engaging in the illegal use of drugs, or has otherwise been
> rehabilitated successfully and is no longer engaging in such use;
> (2) is participating in a supervised rehabilitation program and is no longer
> engaging in such use; or
> (3) is erroneously regarded as engaging in such use, but is not engaging in
> such use . . . .

42 U.S.C. § 12114(b); *see also Nielsen*, 162 F.3d at 610 (quoting 42 U.S.C.

§ 12114(b)).

This court has not yet defined the scope of the "currently engaging"

exception to the ADA, nor the safe harbor for those who are no longer engaging in

the illegal use of drugs.  *See* 42 U.S.C. § 12114(a)-(b).  The district court held that

Mr. Mauerhan failed to qualify for ADA protection at the time he asked to be rehired because he had abstained from using illegal drugs for only one month when he sought reemployment with Wagner. The court determined one month of abstaining from drugs was too short as a matter of law to gain the protections of the ADA.

On appeal, Mr. Mauerhan argues the plain language of the ADA prohibits such a rule. He contends he qualified for ADA protection because, at the time he sought reemployment,[4] he had completed the one-month addiction treatment program and was no longer engaging in drug use. Mr. Mauerhan also believes his status as a drug user was a question of fact that was inappropriate for summary judgment. In response, Wagner points out that no court has held a one-month period of abstinence sufficient to qualify for the safe harbor.[5] As a result, Wagner argues, the district court properly determined the passage of thirty days was insufficient as a matter of law for Mr. Mauerhan to establish he was no longer "currently" using drugs. Although we agree with Mr. Mauerhan that thirty days of

---

[4]In his complaint, Mr. Mauerhan also alleged that he was protected by the ADA at the time of his firing. On appeal, he only raises the question of whether he was protected when Wagner failed to rehire him under the same conditions as before his termination. As such, our inquiry focuses on whether Mr. Mauerhan was "currently engaging in the illegal use of drugs" when he sought reinstatement into his former position. *See* 42 U.S.C. § 12114(a).

[5]*See, e.g.*, *Hoffman v. MCI Worldcom Commc'ns, Inc.*, 178 F. Supp. 2d 152 (D. Conn. 2001); *Quigley v. Austeel Lemont Co.*, 79 F. Supp. 2d 941 (N.D. Ill. 2000); *Wormley v. Arkla, Inc.*, 871 F. Supp. 1079 (E.D. Ark. 1994).

sobriety is not insufficient *per se* under the ADA, we affirm the district court's grant of summary judgment for alternative reasons.

None of our sister circuits have articulated a bright-line rule for when an individual is no longer "currently" using drugs, as defined by the ADA. *See Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1186 (9th Cir. 2001) ("[T]he 'safe harbor' provision applies only to employees who have refrained from using drugs for a significant period of time."); *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 856 (5th Cir. 1999) ("Under the ADA, 'currently' means that the drug use was sufficiently recent to justify the employer's recent belief that the drug abuse remained an ongoing problem."); *Shafer v. Preston Mem'l Hosp. Corp.*, 107 F.3d 274, 278 (4th Cir. 1997), *abrogated on other grounds by Baird ex rel. Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999) ("'[C]urrently' means a periodic or ongoing activity in which a person engages . . . that has not yet permanently ended."); *Teahan v. Metro-North Commuter R.R.*, 951 F.2d 511, 520 (2d Cir. 1991) (Plaintiff's "status as a current substance abuser [under the Rehabilitation Act] . . . is a question of fact . . . .").[6]  Similarly, we decline to adopt such a rule.

---

[6]Title I of the ADA, 42 U.S.C. §§ 12111-12117, provides private employees many of the protections given to federal employees under the Rehabilitation Act, 29 U.S.C. § 791.  *Woodman v. Runyon*, 132 F.3d 1330, 1339 n.8 (10th Cir. 1997). "Congress adopted the definition of [the] term ['disability'] from the Rehabilitation Act definition of the term 'individual with handicaps.' By so doing, Congress intended that the relevant caselaw developed under the Rehabilitation Act be generally applicable to the term 'disability' as used in the ADA." *Renaud v. Wyo. Dept. of Family Servs.*, 203 F.3d 723, 730 n.2 (10th Cir.
(continued...)

The legislative history of the ADA indicates that a rule establishing a firm cutoff for protection would be inappropriate. In its discussion of § 12114(a), the Conference Report explains:

> The provision excluding an individual who engages in the illegal use of drugs from protection . . . is not intended to be limited to persons who use drugs on the day of, or within a matter of days or weeks before, the employment action in question. *Rather the provision is intended to apply to a person whose illegal use of drugs occurred recently enough to justify a reasonable belief that a person's drug use is current.*

H.R. Rep. No. 101-596, at 69 (1990) (Conf. Rep.) (emphasis added); *see also* 29 C.F.R. pt. 1630, app. § 1630.3 (EEOC Interpretive Guidance) ("'[C]urrently engaging' . . . is intended to apply to the illegal use of drugs that has occurred recently enough to indicate that the individual is actively engaged in such conduct.").[7]

The issue, therefore, is not solely one of the number of days or weeks that

_____

[6](...continued)
2000) (alterations in original) (quoting 29 C.F.R. pt. 1630, app. § 1630.2(g)). As such, Rehabilitation Act cases are generally applicable to cases brought under the ADA. *Woodman*, 132 F.3d at 1339 n.8; *see also* 29 U.S.C. § 791(g) ("The standards used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 . . . .").

[7]EEOC interpretive guidance to the ADA is "not controlling upon the courts by reason of [its] authority, but [it does] constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1165 n.5 (10th Cir. 1999) (quoting *Meritor Sav. Bank v. Vinson*, 447 U.S. 57, 65 (1986)) (internal quotation marks omitted).

have passed since an individual last illegally used drugs.  We hold, in agreement with the Fifth Circuit, that under the ADA, 42 U.S.C. § 12114(a), an individual is currently engaging in the illegal use of drugs if "the drug use was sufficiently recent to justify the employer's reasonable belief that the drug abuse remained an ongoing problem."  *Zenor*, 176 F.3d at 856.

Mr. Mauerhan contends he qualifies for the "safe harbor" of the ADA because he had completed the inpatient rehabilitation program and was no longer using drugs at the time he reapplied for his job.  "Mere participation in a rehabilitation program is not enough to trigger the protections of 42 U.S.C. § 12114(b)(2) . . . ."  *Brown*, 246 F.3d at 1188.  The safe harbor provision

> does not permit persons to invoke the Act's protection simply by showing that they are participating in a drug treatment program. Rather, refraining from illegal use of drugs is also essential. *Employers are entitled to seek reasonable assurances that no illegal use of drugs is occurring or has occurred recently enough so that continuing use is a real and ongoing problem.*

H.R. Rep. No. 101-596, at 69 (1990) (Conf. Rep.) (emphasis added).  Thus, although participating in or completing a drug treatment program will bring an individual closer to qualifying for the safe harbor, an individual must also be "no longer engaging in" drug use for a sufficient period of time that the drug use is no longer an ongoing problem.

The Second Circuit applies a similar test.  In a Rehabilitation Act case, the court explained that whether an employee was a "current substance abuser" at the

time of discharge depends on whether the employer

> held a reasonable belief that [he] had a current substance abuse
> problem . . . . that is, whether the employee's substance abuse
> problem is severe and recent enough so that the employer is justified
> in believing that the employee is unable to perform the essential
> duties of his job.

*Teahan*, 951 F.2d at 520.

The Fourth Circuit uses different language to determine when people who have had a drug abuse problem may qualify for ADA protections. *See Shafer*, 107 F.3d at 278 (4th Cir. 1997). In *Shafer*, the court explained that under the ADA and Rehabilitation Act,

> "currently" means a periodic or ongoing activity in which a person
> engages . . . that has not yet permanently ended. . . . [U]nder the plain
> meaning of the statutes, an employee illegally using drugs in a
> periodic fashion during the weeks and months prior to discharge is
> "currently engaging in the illegal use of drugs."

*Id.* The court determined "Congress intended to exclude from statutory protection an employee who illegally uses during the weeks and months prior to her discharge, even if the employee is participating in a drug rehabilitation program and is drug-free on the day she is fired." *Id.* at 279. In that case, the employee was fired for diverting pharmaceutical narcotics from her hospital employer for her personal use. *Id.* at 275, 281 n.6. At the time of her discharge, she had been in rehabilitation for fewer than three weeks. *Id.* at 275. After she was terminated, she found employment elsewhere and relapsed into drug use within two weeks of returning to work. *Id.* Given the facts of the case, it is not clear that the test we

adopt today differs meaningfully from that used in the Fourth Circuit. After all, when an individual has not permanently ended his or her use of drugs, the drug use invariably is an ongoing problem.

The Ninth Circuit also employs different language to define "currently." *See Brown*, 246 F.3d at 1188. It has interpreted the safe harbor provision as applying "only to employees who have refrained from using drugs for a significant period of time." *Id.* at 1186. Again, it is not apparent that this test differs in substance from the one we adopt today. In *Brown*, the court determined the employee was terminated due to drug-related misconduct, not because of her status as an addict. *Id.* at 1187 ("[T]he evidence shows that Lucky Stores terminated her pursuant to its general policy under which three consecutive unexcused absences from work warrant termination."). The Ninth Circuit also explained that the mere six days she was sober between her arrest and termination was not a "sufficient length of time" to qualify for the protections of the ADA's safe harbor. *Id.* at 1188. She failed to qualify for the safe harbor provision of § 12114(b) because her "continuing use of drugs and alcohol was clearly an ongoing problem at least until [she missed work because of her drug arrest]." *Id.*

Wagner attempts to persuade us that an individual could never qualify for ADA protections after only thirty drug-free days. We disagree. No formula can determine if an individual qualifies for the safe harbor for former drug users or is "currently" using drugs, although certainly the longer an individual refrains from

drug use, the more likely he or she will qualify for ADA protection. Instead, an individual's eligibility for the safe harbor must be determined on a case-by-case basis, examining whether the circumstances of the plaintiff's drug use and recovery justify a reasonable belief that drug use is no longer a problem. *See Teahan*, 951 F.2d at 520; EEOC, *A Technical Assistance Manual on the Employment Provisions (Title I) of the Americans with Disabilities Act* § 8.3 (1992).

"Rather than focusing solely on the timing of the employee's drug use, courts should consider whether an employer could reasonably conclude that the employee's substance abuse prohibited the employee from performing the essential job duties." *Zenor*, 176 F.3d at 857 (citing *Teahan*, 951 F.2d at 520). Among the factors that should be considered will be the severity of the employee's addiction and the relapse rates for whatever drugs were used. *See id.* Additionally, a court may examine "the level of responsibility entrusted to the employee; the employer's applicable job and performance requirements; the level of competence ordinarily required to adequately perform the task in question; and the employee's past performance record." *Teahan*, 951 F.2d at 520.

Nothing in our decision prevents an employer from terminating an individual for drug-related misconduct. "[U]nsatisfactory conduct caused by alcoholism and illegal drug use does not receive protection under the ADA or Rehabilitation Act." *Nielsen*, 162 F.3d at 609. An employer

> may hold an employee who engages in the illegal use of drugs or who is an alcoholic to the same qualification standards for employment or job performance and behavior as such entity holds other employees, *even if any unsatisfactory performance or behavior is related to the drug use or alcoholism of such employee . . . .*

42 U.S.C. § 12114(c)(4) (emphasis added); *see also Nielsen*, 162 F.3d at 609; *Salley v. Circuit City Stores, Inc.*, 160 F.3d 977, 981 (3d Cir. 1998) (holding that "drug-related misconduct is a legitimate, non-discriminatory reason for termination").

During summary judgment proceedings, Wagner presented evidence that at the time Mr. Mauerhan reapplied for employment, his "prognosis based on history and response to treatment . . . [was] set at guarded." Aplt. App., vol. II at 318. More importantly, Wagner provided testimony by an addiction specialist that approximately three months of treatment would be necessary for an addict like Mr. Mauerhan to reach a "threshold of significant improvement" in his or her addiction. *Id.* at 488. Mr. Mauerhan failed to contest either of these assertions. Mr. Mauerhan even conceded during his testimony, "I would think that anyone coming fresh out of the rehab is guarded." *Id.* at 475. Instead, he simply argued that he has continued to participate in a recovery program and has refrained from drug use since entering into the inpatient program. This is not the same as providing evidence from which a fact-finder could infer that at the time he applied to return to work – the day after his inpatient drug program ended – it was unreasonable to believe his drug addiction was sufficiently recent that he might

-15-

have an ongoing problem.

If a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion," and may "grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show the movant is entitled to it." Fed. R. Civ. P. 56(e). Mr. Mauerhan failed to rebut evidence that more time was required for him to reach a stable state in his recovery. Although thirty days without using drugs may in some cases be sufficient for an employee to gain the protection of the ADA, the record before us shows that in this case it was not. On this record, it is undisputed that Mr. Mauerman's recovery status was "guarded" and at least ninety days of recovery was necessary to ensure significant improvement in his condition. As a result, Mr. Mauerhan failed to raise a genuine dispute regarding whether he was currently engaging in the illegal use of drugs within the meaning of the ADA at the time he asked to be rehired.

Because Mr. Mauerhan failed to raise a genuine dispute of fact on an element of his prima facie case, summary judgment was appropriate. Accordingly, we **AFFIRM** the district court's grant of summary judgment to Wagner under the ADA.